210 So.2d 253 (1968)
Helen A. HOWELL, Administratrix of the Estate of Nathaniel W. Howell, Deceased, Appellant,
v.
H.M. FIORE and Bayshore Utility Company, a Florida Corporation, Appellees.
No. 7345.
District Court of Appeal of Florida. Second District.
May 1, 1968.
Rehearing Denied June 7, 1968.
*254 Hylan H. Kout, Miami Beach, for appellant.
No appearance for appellees.
LENFESTEY, JAMES A., Associate Judge.
Nathaniel W. Howell and Helen A. Howell, his wife, on February 24, 1965, conveyed certain real property, together with improvements thereon consisting of a water plant, lines, pumps and other personal property, to H.M. Fiore. At the same time an Assignment was made of the water plant franchise by Nathaniel W. Howell to H.M. Fiore.
As a part of the same transaction, and on the same date, a "Repurchase Agreement" was executed by H.M. Fiore back to Nathaniel W. Howell, which agreement provided that the property would not be sold without prior knowledge and consent of Nathaniel W. Howell; and that in the event of a sale, creditors of Nathaniel W. Howell listed on a schedule attached to the Repurchase Agreement would first be paid and the balance, after such payment, would be delivered over to Nathaniel W. Howell; that *255 if prior to a sale Nathaniel W. Howell desired to retake title to the property he might do so upon paying to H.M. Fiore any costs or disbursements made by him during the time he had held title thereto; and that upon such payment H.M. Fiore would deliver a Warranty Deed, Bill of Sale and Assignment of Franchise back to Nathaniel W. Howell.
On March 21, 1965 Nathaniel W. Howell died. His widow, Helen A. Howell, was appointed as Administratrix of his estate by the County Judge, Lee County, Florida.
On April 9, 1965 the Administratrix notified H.M. Fiore of her intention to "repurchase", requested a statement from him of his expenditures, and requested reconveyance and reassignment of the property to the Estate of Nathaniel W. Howell.
H.M. Fiore refused to reconvey to the plaintiff, having already conveyed and assigned the franchise, plant and land, to Bayshore Utility Company. Mr. Fiore is the President and major stockholder of that corporation. The date of the assignment and conveyance does not appear in the record, but the deed was recorded on April 16, 1965, after the plaintiff had given notice of her intention to repurchase.
The plaintiff, Helen A. Howell, as Administratrix of the Estate of Nathaniel W. Howell, deceased, filed suit in Chancery seeking specific performance of the Repurchase Agreement and general equitable relief.
The defendants, H.M. Fiore and Bayshore Utility Company, made several general defenses, including the defense that the Repurchase Agreement was personal and terminated with the death of Nathaniel W. Howell, and further that the agreement was terminated during his lifetime by Nathaniel W. Howell.
The record in this cause indicates that Nathaniel W. Howell did business as Bayshore Utility Company prior to the transfer of February 24, 1965. Thereafter, H.M. Fiore formed a Florida corporation, also named Bayshore Utility Company, in which he owned 51 of the 71 shares of stock issued. It was to this corporation that H.M. Fiore transferred title to the real property and assigned the water plant franchise after the death of Nathaniel W. Howell.
The Final Decree of the Chancellor below found that the equities were with the defendants and denied specific performance sought by the plaintiff. From this Final Decree an appeal was taken to this Court. The Appellees have failed to file a brief in this appeal. However, the record shows that they have admitted the existence of, and the contents of, the "Repurchase Agreement" as a part of the transaction of February 24, 1965.
After thorough analysis and study, we find that we do not agree with the result reached by the Chancellor below. We do not believe that the applicable principles of law and equity have been utilized and applied to the controlling facts of this case upon which facts there is no dispute.
The original transfer of the water plant franchise, water plant and land, to H.M. Fiore, and his execution on the same date of the "Repurchase Agreement" attached, bespeaks loudly and convincingly to this Court of an implied trust, and there is nothing in the record to suggest otherwise.
A resulting trust arises when the legal estate in property is disposed of, conveyed or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case a trust is implied or results in favor of the person whom equity deems to be the real owner. Bogert, Trusts and Trustees, Chapter 23, Resulting Trusts, Section 464; Macknet v. Rogers, Fla.App. 1960, 119 So.2d 72; Grapes v. Mitchell, Fla. 1963, 159 So.2d 465.
*256 In Wadlington v. Edwards, Fla. 1957, 92 So.2d 629, a resulting trust is defined as:
"A resulting trust is simply a status that automatically arises by operation of law out of certain circumstances * * *. In the creation of a resulting trust it is essential that the parties actually intend to create the trust relationship but fail to execute documents or establish adequate evidence of the intent. The typical illustration is where one man furnishes the money to buy a parcel of land in the name of another with both parties intending at the time that the legal title is held by the named grantee for the benefit of the unnamed beneficiary."
In a resulting trust a vital element is the intention, which may be presumed from the facts. Smith v. Smith, 143 Fla. 159, 196 So. 409.
In the present case the deed and Repurchase Agreement must be construed together. It is clear that nominal consideration only was given for the deed and that in the event of repurchase there was to be no payment of consideration, excepting the costs expended by Fiore while he held title. Further, the wording of the Repurchase Agreement indicates that equitable ownership remained with Howell and that his creditors were to be protected in the event of sale, and that any funds remaining after the payment of his creditors would be delivered over to him by the person having bare legal title, that is, Fiore.
We are not unmindful of the strong presumption in favor of the correctness of deeds and other instruments as written and executed, and that this presumption of correctness would prevail unless the party who alleges that it does not express the truth overcomes that presumption and shows the contrary by satisfactory evidence which is clear, strong and convincing. From our review of the record in this cause, we believe that this burden was more than adequately met. Furthermore, the principles of equitable estoppel must be applied in putting into effect the clear intention of not only the deed, but also the Repurchase Agreement executed as a part of the same transaction.
Equitable estoppel is a doctrine generally recognized by the Courts of this country, by which a party is prevented from setting up his legal title because he has through his acts, words or silence, led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience. Cook v. Katiba, Fla. 1966, 190 So.2d 309.
The conclusion is inescapable that the documents and transfers of February 24, 1965 were intended to and did result in bare legal title vesting in H.M. Fiore, with the beneficial and equitable ownership remaining in Nathaniel W. Howell.
We hold that the lower court erred in failing to impress a trust in this cause and it is, therefore, unnecessary to rule on the rights under the "Repurchase Agreement" surviving the death of one of the major parties thereto. This matter has been decided many times in the past. Grapes v. Mitchell, supra.
We also hold that the assessment of costs against the plaintiff was improper under the circumstances of this determination.
The Final Decree is hereby reversed, and this cause is remanded to the trial court for the entry of a Final Decree consistent with the views herein expressed.
LILES, C.J., and HOBSON, J., concur.