29 So.3d 1221 (2010)
The FOUNDATION FOR the DEVELOPMENTALLY DISABLED, INC., Appellant,
v.
STEP BY STEP EARLY CHILDHOOD EDUCATION AND THERAPY CENTER, INC., and The Bower Foundation, Appellees.
No. 2D09-686.
District Court of Appeal of Florida, Second District.
March 26, 2010.
*1222 Roger G. McMorrow of The McMorrow Law Firm, P.A., Naples, for Appellant.
Marve Ann M. Alaimo and Christopher L. Ulrich of Cummings & Lockwood, LLC., Bonita Springs, for Appellee Step By Step Early Childhood Education and Therapy Center, Inc., Lawrence A. Farese and Erica L. Airsman of Robins, Kaplan, Miller & Ciresi, L.L.P., Naples, for Appellee The Bower Foundation.
Bill McCollum, Attorney General, and Blaine H. Winship, Assistant Attorney General, Tallahassee, as Amicus Curiae for Appellees.
WHATLEY, Judge.
The Foundation for the Developmentally Disabled, Inc. (the "Foundation"), appeals a final judgment imposing a resulting trust and a constructive trust in favor of the operator of Step By Step Early Childhood Education and Therapy Center, Inc. ("Step By Step"). At the center of this dispute are donations made during the 1980s to the Foundation by Edwin Bower through his charitable foundation, The Bower Foundation. Mr. Bower intended that his donations be used to acquire land and construct a facility to benefit pre-school-aged children with disabilities who participated in a program referred to as Step by Step. However, he never created a written trust agreement when he made those donations.
At the time the donations were made to the Foundation, the Step By Step program was not a separate corporate entity. It was one of two programs operated by the Foundation. The appellee, the Step By Step Early Childhood Education and Therapy Center, Inc., was not formed until 2003. The Bower Foundation had been previously dissolved in 1995, and Mr. Bower passed away in 2003.
A facility was constructed as planned and Step By Step operated a program for pre-school-aged children with disabilities in the facility for over fifteen years. However, when a lease on the property expired, the Foundation notified Step By Step that it intended to collect rent for the use of the property. Step By Step thereafter filed a complaint asking the trial court to find that it was entitled to rent free use and occupancy of the property. The Bower Foundation, although it had been dissolved for more than a decade, joined the suit by filing a complaint in intervention, asking the trial court to impose a constructive trust and a resulting trust on the real property for the benefit of Step By Step.
In its final judgment, the trial court ruled in favor of Step By Step and The Bower Foundation and imposed constructive and resulting trusts on the real property for the benefit of Step By Step. The trial court held that no rent, other than nominal rent, may be charged of the operator of the Step By Step program without an agreement.
We reverse because we conclude that The Bower Foundation did not have standing *1223 to bring its claim, where the corporation was dissolved more than a decade before the filing of the complaint. We further conclude that the evidence did not support the imposition of a constructive or a resulting trust where the testimony at trial established that The Bower Foundation never intended to create a trust.

I. Circuit Court Proceedings
In Step By Step's complaint for declaratory judgment against the Foundation, it asked the trial court to determine Step By Step's beneficial interest in real property located in Collier County, Florida, specifically requesting that the trial court find that Step By Step is entitled to rent free use and occupancy of the property. In an amended complaint, Step By Step asked the trial court to determine the relationship between the Foundation and Step By Step and further asked it to find a constructive trust, resulting trust, or other fiduciary or confidential relationship. In addition to rent free use of the property, Step By Step asked that any rent received by the Foundation for the property be awarded to Step By Step, that the sale of the property be prohibited and, if a sale were to be permitted, any proceeds from the sale be awarded to Step By Step.
The Bower Foundation thereafter filed a complaint in intervention also asking the trial court to impose a constructive trust and a resulting trust on the real property for the benefit of Step By Step. The complaint alleged that between 1985 and 1989, The Bower Foundation made restrictive and conditional gifts totaling approximately $165,000 to the Foundation for the sole and express purpose of acquiring land and constructing a facility to be used by the Step By Step program to benefit pre-school-aged children who participated in the program.[1]
After a bench trial, the trial court entered a final judgment finding that both Step By Step and The Bower Foundation had standing to bring their claims and that the Foundation held the property subject to a constructive trust and a resulting trust in favor of Step By Step. The trial court based this finding on its determination that The Bower Foundation gave the Foundation $165,000 to purchase the property and construct a building for the exclusive use and benefit of Step By Step and that the Foundation would be unjustly enriched if it were permitted to use the property to benefit a different program.

II. The Bower Foundation's Standing
The trial court specifically found that The Bower Foundation had standing to file its complaint in intervention. We note that a trial court's decision regarding a party's standing to file suit is reviewed using the de novo standard of review. Fox v. Prof'l Wrecker Operators of Fla., Inc., 801 So.2d 175, 178 (Fla. 5th DCA 2001). The Bower Foundation was a Michigan corporation which was dissolved in 1995. As to dissolved corporations, Michigan law provides as follows:
[A] dissolved corporation, its officers, directors and shareholders shall continue to function in the same manner as if dissolution had not occurred. Without limiting the generality of this section:... (e) The corporation may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred.
*1224 Mich. Comp. Laws § 450.1834 (2008). However, language included in section 450.1834 notes that it is subject to what is now titled section 450.1833, which provides limitations on the actions of a dissolved corporation:
[A] dissolved corporation shall continue its corporate existence but shall not carry on business except for the purpose of winding up its affairs by: ...
(a) Collecting its assets.
(b) Selling or otherwise transferring, with or without security, assets which are not to be distributed in kind to its shareholders.
(c) Paying its debts and other liabilities.
(d) Doing all other acts incident to liquidation of its business and affairs.
Mich. Comp. Laws § 450.1833 (2008).
In the present case, The Bower Foundation was dissolved thirteen years before it filed the suit in intervention. The suit involved money which The Bower Foundation had donated for the benefit of Step By Step in the 1980s. Therefore, the complaint was not filed for the purpose of winding up the affairs of the corporation by collecting assets, selling or transferring assets, paying debts or other liabilities, or doing any act incident to liquidating its business and affairs. Id. As a result, The Bower Foundation lacked standing to file the complaint in intervention, and the trial court should have dismissed the complaint.

III. The Constructive and Resulting Trusts
We also conclude that the trial court erred in imposing a constructive trust and a resulting trust where the testimony at trial established that The Bower Foundation never intended to create a trust. Typically, a trust involving land must be in writing to be valid. § 689.05, Fla. Stat. (2008). Nevertheless, a resulting trust or a constructive trust may be created based on the conduct of the parties. At trial, George A. Wilson testified that the Foundation was originally formed in 1983 to limit the liability associated with operating a program referred to as the Training and Educational Center for the Handicapped, Inc. ("TECH"), and to conduct fundraising for TECH. At that time, TECH had two departments: Step By Step, which helped pre-school-aged children with disabilities; and Strive, which helped adults with disabilities.[2] In 2003, the Step By Step Early Childhood Education and Therapy Center, Inc., was formed to operate the Step By Step program.
Mr. Wilson testified that when The Bower Foundation donated $165,000 to TECH, Mr. Bower made it clear both orally and in letters that he intended that the donation be used exclusively to purchase and construct a facility that would be used for only the Step By Step program. However, Mr. Wilson, an attorney who drafted Mr. Bower's personal trusts, also testified that he did not draft a trust agreement with regard to The Bower Foundation and the property at issue, because Mr. Bower did not intend that his gifts to the Foundation be held in trust. Mr. Wilson testified, "[Mr. Bower] did not want the Foundation to create a trust to hold title to the real estate or the facility." Another witness, Charles M. Kelly, Jr., who was the secretary on the Foundation's Board of Directors from 1986 until 1993, testified that Mr. Bower never expressed an intent to create a trust with regard to his contributions to the Foundation.
*1225 The Fifth District addresses a similar situation in Persan v. Life Concepts, Inc., 738 So.2d 1008, 1009 (Fla. 5th DCA 1999),[3] where a group of about twenty donors gave land to the Central Florida Sheltered Workshop, Inc. ("CFSW"), so that living facilities could be constructed for disadvantaged adults. CFSW also solicited the community for $200,000 to pay for the construction of the homes. Id. After the homes were operated for approximately fifteen years, a decision was made to sell the property. Id. As in the present case, there was evidence presented at trial that the donors gave the land with the intent that the land be used for the specific purpose of providing living facilities for disadvantaged adults, but a written trust was never created. Id. at 1010. In Persan, the court noted that there was no evidence of an intent to create any type of trust and that the evidence established only an intent to donate land and money for the homes to be constructed. Id. In holding that a charitable trust was not created, the court stated as follows:
Making a gift to a charity for a specific project or purpose does not create a charitable trust. For this court to suggest that it does would create havoc for charitable institutions. A charity has to be able to know when a donation is a gift and when it is merely an offer to fund a trust for which the charity is taking on fiduciary responsibilities. The creation of such a trust must be express.
Id.
The Fifth District further concluded that a resulting trust was not established. "The evidentiary burden to prove a resulting trust is `clear, strong and unequivocal,' beyond a reasonable doubt." Id. To establish a resulting trust, the parties must "actually intend to create the trust relationship but fail to execute documents or establish adequate evidence of the intent." Wadlington v. Edwards, 92 So.2d 629, 631 (Fla.1957). A typical example of a resulting trust is where one party "furnishes the money to buy a parcel of land in the name of another with both parties intending at the time that the legal title is held by the named grantee for the benefit of the unnamed beneficiary." Id.
A resulting trust arises when the legal estate in property is disposed of, conveyed or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case a trust is implied or results in favor of the person whom equity deems to be the real owner.
Howell v. Fiore, 210 So.2d 253, 255 (Fla. 2d DCA 1968).
In the case at bar, there was no evidence that the parties intended to create a trust relationship. In fact, the evidence was to the contrary  that Mr. Bower did not intend that his gifts to the Foundation be held in trust. Consequently, the trial court erred in finding that Step By Step established that there was a resulting trust as to the property.
Unlike a resulting trust, a constructive trust does not have the element of intent or an agreement, either oral or written, to create a trust relationship. Wadlington, 92 So.2d at 631. "The trust is `constructed' by equity to prevent an unjust enrichment of one person at the *1226 expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem." Id. Here, there was no evidence of fraud, undue influence, abuse of confidence or mistake in the transaction. As a result, the trial court also erred in finding that there was a constructive trust between the parties.
We note the inherent problems that would be created if an individual who donates to a charitable organization with merely a stated intent that the donation be used for a specific purpose were able to control, or their heirs were able to control, that corporation in perpetuity. Although The Bower Foundation donated a significant amount of money to the Foundation, it was a small percentage of the money the Foundation used to construct and expand the facility. The board of directors of a nonprofit corporation has the responsibility to determine what is in the best interest of the corporation going forward, and therefore, absent a written trust agreement, it should not be bound by the intent of donors who gave many years ago when such is no longer in the best interest of the corporation.
Accordingly, we reverse the final judgment imposing a resulting trust and a constructive trust in favor of the operator of the Step By Step program and remand with directions that judgment be entered in favor of the Foundation.
Reversed and remanded with directions.
ALTENBERND, J., Concurs.
SILBERMAN, J., Concurs specially with opinion.
SILBERMAN, Judge, Concurring specially.
I agree that reversal is required and make the following observations.
In Wadlington v. Edwards, 92 So.2d 629 (Fla.1957), the Florida Supreme Court discussed resulting and constructive trusts, as distinguished from express trusts. A resulting trust "automatically arises by operation of law out of certain circumstances." Id. at 631. The parties must "actually intend to create the trust relationship but fail to execute documents or establish adequate evidence of the intent." Id. Here, the evidence outlined the understanding between Mr. Bower and the Foundation but did not demonstrate their intent to create a trust relationship. To the contrary, the evidence confirmed that they did not wish to form a trust for specified reasons. Thus, the evidence did not support the creation of a resulting trust.
A constructive trust differs from a resulting trust in that
it is a relationship adjudicated to exist by a court of equity based on particular factual situations created by one or the other of the parties. The element of intent or agreement either oral or written to create the trust relationship is totally lacking. The trust is "constructed" by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem.
Id. The party seeking a constructive trust must prove the elements by clear and convincing evidence. Gersh v. Cofman, 769 So.2d 407, 409 (Fla. 4th DCA 2000); Abreu v. Amaro, 534 So.2d 771, 772 (Fla. 3d DCA 1988).
The trial court determined that the Foundation "would be unjustly enriched if it is now permitted to use the proceeds of the gifts of The Bower Foundation for its other charitable purpose, benefiting the adult disabled, or for any purpose other than the purpose which was intended." *1227 However, the court did not make any findings that the Foundation committed fraud, exercised undue influence, or abused Mr. Bower's confidence or that there was a mistake in the transaction between Mr. Bower and the Foundation. Further, the evidence would not support such conclusions. And absent evidence of that nature, the trial court's finding of unjust enrichment is also unsupported.
Mr. Bower and the Foundation agreed that his donations would be for the benefit of the Step By Step program and would help to establish a facility for the use of the program. This intention was carried out, and Step By Step benefited for many years, but the Foundation eventually determined that it could not continue to provide rent-free use of the building to Step By Step.
Nothing in the record suggests that the Foundation obtained Mr. Bower's donations through the use of fraud, undue influence, abuse of confidence, or mistake in the transaction. Instead, the record establishes that circumstances relating to the Foundation's work and to the Step By Step program changed through the years. The operator of the Step By Step program had changed several times; the needs and goals of the Foundation had changed; and the continued influx of funds from other sources was required to maintain and operate the building in which Step By Step was located. The fact that these changes occurred does not support a conclusion that the Foundation acted improperly when it agreed with Mr. Bower as to the use of his donations. Because the evidence did not establish that the Foundation would be unjustly enriched absent the creation of a constructive trust, the trial court's imposition of a constructive trust must fail.
Both the Foundation and Mr. Bower had expectations as to the use of his donations and the ongoing work of the Foundation and the Step By Step program. Unfortunately, long after Mr. Bower's death and the dissolution of his own organization through which he undertook charitable works, a dispute arose as to the Foundation's obligation to continue supporting the Step By Step program. This type of dispute may have been avoided through a more detailed understanding, appropriately documented, as to the parties' intentions and expectations and the duration of any agreement obligating the Foundation to continue supporting the Step By Step program. Instead, this dispute has led to undoubtedly expensive, time-consuming litigation, which diverted precious resources from the charitable programs that the Foundation and Mr. Bower supported.
NOTES
[1] The facility was built and operated as planned and was expanded in 1994. The cost of expansion, which was approximately $700,000, was paid for with contributions from the community and a mortgage and note signed by the Foundation.
[2] Mr. Wilson eventually became chairman of the board of directors of both TECH and Step By Step.
[3] In its amicus brief, the State contends that Persan v. Life Concepts, Inc., 738 So.2d 1008, 1009 (Fla. 5th DCA 1999), was wrongly decided. However, it acknowledges that in the ten years following the decision in Persan, the legislature has made no changes to Florida law regarding constructive and resulting trusts.